**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **HENRY A. K. KAIMIMOKU**, Defendant–Appellant

NO. 15447

(FC–CR. NO. 91–1667)

DECEMBER 16, 1992

BURNS, C.J., HEEN, AND WATANABE, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Defendant Henry A. K. Kaimimoku (Father) appeals the family court's May 29, 1991 judgment convicting him of abuse of family and household members, Hawai'i Revised Statutes (HRS) § 709–906 (1985).

Father concedes that he struck his seventeen–year–old daughter (Daughter). However, he maintains that his use of force upon his Daughter was justified parental discipline under HRS § 703–309(1) (1985) and that the trial court erred in concluding otherwise. We agree with Father and accordingly reverse his conviction.

## FACTS

The family court entered Findings of Fact and Conclusions of Law on July 17, 1991. The Findings of Fact do not find any facts occurring prior to the first response by the police. However, Conclusion of Law 1 states that "[t]he Court found the State's witnesses to be credible." According to the State's witnesses, the facts are as follows: On February 13, 1991, Father was home alone with his three–month–old grandson (Grandson) from 7:30 a.m. until early afternoon. When Father's wife (Mother) and their Daughter, who is Grandson's mother, returned home, Father began yelling and using profanity at Mother because she had been gone for a long time and he had had a difficult time with Grandson. Mother tried to explain why she was delayed, but Father continued to yell at her. Daughter came to Mother's defense, using profanity at Father and yelling at him to stop picking on Mother. Father responded by yelling and using profanity at Daughter; telling her to stop yelling and using profanity at him because his communications with Mother were none of Daughter's business. Father and Daughter were nose to nose while communicating with each other. Daughter admits that she called Father a "fucker" and "f'in prick," that

Father told her not to swear at him, and that she did not obey Father.

Father was "holding" Daughter. Mother tried to separate them and Daughter ran outside. On her way out, she yelled to Mother, "Ma, call the cops. Call the cops." Mother did so. Father followed Daughter down the road about a hundred feet. Daughter testified that Father, while standing about five feet away from her, with an "open fist slapped [her] on [her] face" and "whacked" her on her face "with a[n] open fist straight on and on the right side of her face." Daughter also testified that Father punched her on her shoulders with a "closed fist," but she could not remember how many times.

Father and Daughter began walking back to the house. Just before they re–entered the house, Daughter again began using profanity at Father, using the "F" word, and Father, according to Daughter, again "slapped" and "whacked" Daughter.

In response to Mother's earlier call, Police Officer Paiva arrived at the scene shortly thereafter and observed Father and Mother arguing in the carport. Mother explained why she had called the police but did not indicate that Daughter had been hurt. Since Daughter had left the house, she was not interviewed by the officer. No arrests were made, but Officer Paiva suggested that Father leave the premises so everyone could cool off, and Father followed that advice.

Daughter then returned to the house and told Mother that Father had beat up on her. Mother therefore summoned the police again, requesting that assault charges be filed against Father. Officer Paiva arrived at the scene a second time and this time spoke to Daughter who did not show him any injuries but complained of pain to the back and chest area. Father was arrested later that day, without incident, for the offense of abuse of a family or household member.

At trial, the nature of Daughter's injuries was testified to by Mother as follows:

Q. Tell us — did you see any injuries on her?

A. Yes, the next day.

Q. Where did you see injuries on her?

A. Bruises on her side, over here.

Q. When you say, "bruises", what do you mean?

A. Black and blues.

Q. Okay.

And when you say, "on her side", you mean — you're showing your shoulder, is that where you mean?

A. Inside her collar line. Right across here.

Q. Okay.

Can you —

A. It was prints of his hand, you know, his fingers and his thumb into her like that.

Q. And when did you —

A. And she had a scratch.

Q. — see those injuries?

A. The next day when she was at the doctors.

Following a bench trial at which Father raised the defense of parental discipline justification under HRS § 703–309(1), the family court orally stated, "I don't find that this was a disciplinary action. . . . [T]his is one more chaotic incident in a chaotic family life. . . . And even if I would get to measuring force, I think the case law is pretty ample that this would fall outside of the reasonable force."

In Conclusion of Law 3, the court determined: "The force used by [Father] was not for the purpose of safeguarding or promoting the welfare of [Daughter]; nor was it the type of force for prevention or punishment of misconduct."

The court thereupon convicted Father of abuse of a family or household member and sentenced him to 60 days' incarceration, with 30 days suspended for one year, provided Father remain

arrest– and conviction–free. The court also ordered Father to attend individual and anger management counseling at the Waianae Mental Health Center.

## DISCUSSION

HRS § 709–906(1) (1985) states in relevant part as follows: "It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member[.]" Father concedes that Daughter is a family member and that he struck her. He maintains, however, that he struck her to discipline her and that his conduct was justified under HRS § 703–309 (1985).

Father's contentions require us to examine the parameters of appropriate parental discipline under the Hawai'i Penal Code.

HRS § 703–309 states in relevant part as follows:

> **Use of force by persons with special responsibility for care, discipline, or safety of others.** The use of force upon or toward the person of another is justifiable under the following circumstances:
>
> (1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor, or a person acting at the request of such parent, guardian, or other responsible person; and
>
> (a) The force is used for the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of his misconduct; and
>
> (b) The force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress, or gross degradation.

In order to invoke the justification defense of HRS § 703–309(1), a defendant must meet a four–part test. First, the defendant must be a parent, guardian, or other person described in subsection (1). Second, the defendant must have used force

against a minor for whose care and supervision the defendant is responsible. Third, the defendant must have used the force for the purpose of safeguarding or promoting the welfare of the minor. Finally, the force used by the defendant must not have been designed to cause or known to create a substantial risk of the results listed in subsection (1)(b).

When evidence of justification is adduced at trial, the burden is on the prosecution to disprove the justification evidence that was adduced or to prove facts negativing the justification defense, and to do so beyond a reasonable doubt. *State v. McNulty*, 60 Haw. 259, 262, 588 P.2d 438, 442 (1978), *cert. denied*, 441 U.S. 961, 99 S. Ct. 2406, 60 L. Ed. 2d 1066 (1979); *State v. Sanchez*, 2 Haw. App. 577, 578, 636 P.2d 1365, 1366 (1981); *State v. Realina*, 1 Haw. App. 167, 172–73, 616 P.2d 229, 233 (1980).

Because the defense of justification is not designated as an affirmative defense by the Hawai'i Penal Code or any other statute, the defendant, pursuant to HRS § 701–115, "is entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt[.]"

According to the Commentary to HRS § 703–309, subsection (1) "sets a fairly simple and unexceptionable standard; the right of parents to use force to discipline their children is recognized, subject to clear requirements not to cause permanent injury."

HRS § 703–309(1) is derived from and is identical in language to section 3.08(1) of the Model Penal Code, recommended by the American Law Institute. *See* Hse. Conf. Comm. Rep. No. 1, in 1972 House Journal at 1035; Sen. Conf. Comm. Rep. No. 1, in 1972 Senate Journal at 734. The drafters of the Model Penal Code offer the following comment regarding section 3.08(1):

> Subsection (1) deals with the parent or guardian of a minor or a person similarly responsible for his general care and supervision. As the justification is defined, its

scope has two determinants: (a) that force is used for the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of his misconduct; and (b) that the force is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation.

The formulation is in some respects less stringent than that in Section 147 of the Restatement of Torts, which speaks of "such reasonable force" and "such reasonable confinement" as the parent "reasonably believes to be *necessary* for" the "proper control, training, or education" of the child. To require belief in *necessity* to avoid criminal conviction was thought to be too extreme. Parents may defensibly use force less on the basis of a judgment of necessity than simply with the belief that it is an appropriate preventive or corrective measure. Hence, so long as the person exercising parental authority acts for the purpose of safeguarding or promoting the child's welfare (including the specific purpose of preventing or punishing misconduct), he is privileged under the Model Code unless he culpably creates substantial risk of the excessive injuries specified in Subsection (1)(b).

The formulation also differs from the Restatement in not explicitly demanding that the force be reasonable. It was believed that so long as a parent uses moderate force for permissible purposes, the criminal law should not provide for review of the reasonableness of the parent's judgment. Of course, even if a statute includes language about necessity or reasonableness or both, it would be extraordinary for a parent using moderate force for a permissible purpose to be prosecuted because of misjudgment. Thus the less stringent language of the Model Code

is unlikely to make a great practical difference, but it does
more accurately reflect the latitude that is actually given
to judgments of parents in disciplining their children.

Model Penal Code § 3.08 Comment (1979) (footnote omitted; emphasis in original).

HRS § 703–309(1) thus grants to parents considerable autonomy to discipline their children, and as long as parents use moderate force for permissible purposes in disciplining their children and do not create a substantial risk of the excessive injuries specified in subsection (1)(b), they will not be criminally liable.

With the foregoing background and historical perspective in mind, we review the evidence in the instant case.

The record is clear that Father is the parent of Daughter, that Daughter is Father's child, and that Daughter was a minor on February 13, 1991, the date of the offense. Father also concedes that he struck Daughter. Therefore, the first two parts of the four–part test to invoke the parental discipline defense have been met.

We next consider whether there is substantial evidence on the record that the force used by Father on Daughter was not used by Father for the purpose of punishment of Daughter's misconduct. Father testified that he used force on Daughter to punish her for yelling profanities at him, disobeying him, and being disrespectful. Daughter admitted that she yelled profanities at Father and that she did not obey him when he told her not to yell profanities at him. There is no evidence on the record that Father struck Daughter for any purpose other than for punishment. Therefore, the third part of Father's justification defense has been met.

Finally, we determine whether there is substantial evidence on the record that the force Father used was "not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress, or gross degradation." HRS § 703–309(1)(b).

In *State v. DeLeon*, 72 Haw. 241, 813 P.2d 1382 (1991), the Hawai'i Supreme Court considered a situation involving a father

who hit his 14–year–old daughter "from six to ten times, with a crisscross motion, on her stretch pants, above the knees, with a 36–inch long belt, folded in two. The belt was one and one–half inches wide. [The daughter] testified that she felt a little pain, that the spanking stung her, and that the pain lasted an hour and a half. She had bruises for about a week." *Id.* at 242, 813 P.2d at 1383. The Hawai'i Supreme Court concluded that this evidence was insufficient to support a finding that the force used by father exceeded the protection provided by HRS § 703–309(1)(b).

In the light of *DeLeon*, we conclude that the fourth part of Father's justification defense has been met.

The trial court found that the evidence did not raise a reasonable doubt as to Father's guilt. We conclude that the State did not satisfy its burden of disproving Father's justification defense. In other words, the evidence in this case is insufficient to support a finding that the force used by Father exceeded the protection provided by HRS § 703–309(1)(b).

## CONCLUSION

Accordingly, we reverse the family court's May 13, 1991 judgment convicting defendant Henry A. K. Kaimimoku of abuse of family and household members, HRS § 709–906.

*Joyce K. Matsumori–Hoshijo*, Deputy Public Defender, on the brief, for defendant–appellant.

*Charlotte J. Duarte*, Deputy Prosecuting Attorney, on the brief, for plaintiff–appellee.