911 P.2d 725

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Delbert L. CROUSER, Defendant–Appellant.**

No. 18580.

Supreme Court of Hawai'i.

Feb. 15, 1996.

William F. Cooper, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant Delbert L. Crouser.

Gerald A. Garcia, Deputy Prosecuting Attorney, on the briefs, Kealakekua, for plaintiff-appellee State of Hawaiʻi.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Following a bench trial, defendant-appellant Delbert L. Crouser was convicted of abuse of a family and household member, in violation of Hawaiʻi Revised Statutes (HRS) § 709–906 (1993).[1] On appeal, Crouser con-

---

1. HRS § 709–906 provides in relevant part that:

(1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member. . . .

For the purposes of this section, "family or household member" means spouses or former spouses, parents, children, and persons jointly residing or formerly residing in the same dwelling unit.

tends that: (1) the court's finding that his conduct was not justified under HRS § 703–309 (1993)[2] is clearly erroneous; (2) there was insufficient evidence to support the conviction; and (3) the trial court committed plain error by failing to dismiss the case because HRS § 703–309 is unconstitutionally vague and/or overbroad. For the reasons discussed below, we affirm.

## I. BACKGROUND

In May 1993, the victim, a fourteen-year-old special education student at Kealakehe Intermediate School (Minor), moved from her father's home into the home of her mother and her mother's boyfriend, Crouser. By all accounts, Minor was prone to untruths. Her school counselor, the school health aide, and her foster mother characterized Minor as a pleasant, cooperative girl, who would sometimes make up stories to get attention, or lie to agree with adults and not make waves, but never to hurt others.

Minor was required by her mother and Crouser to bring home a daily progress report signed by her teachers. On May 19, 1993, Minor forgot to pick up the report from her counselor for her teachers to sign. She therefore filled the report out herself, changing some of the grades and her attendance record. Minor testified that she changed her perfect attendance record to reflect some absences because she believed that Crouser would not believe the reported perfect attendance and that Crouser would therefore discipline her for lying.

Crouser somehow learned that Minor had made changes to the report and went to Minor's room, where she was doing her homework. Minor testified that Crouser called her a liar and hit her across both sides of her face, knocking her to the floor. As she was trying to get up, Crouser grabbed

her and threw her face down on the bed. According to Minor's testimony, Crouser put his knee on Minor's back, pulled her pants and underwear down to her knees, and started "whacking" her bare buttocks. When Crouser left the room, Minor pulled up her underwear and pants, but Crouser returned with a plastic bat and closed the door. He again pulled down Minor's pants and underwear and struck her with the bat on the buttocks, arm, thighs, and torso until the bat broke. Minor could not remember the number of times that she had been struck, but testified that the incident lasted approximately thirty minutes. Although Minor testified on direct examination that her mother was not home at the time, she admitted on cross-examination that her mother could have been home, but Minor had not seen her. Minor opined that, if her mother had been home at the time, her mother would have "do[ne] something." After being disciplined, Minor had a hard time sitting and felt dizzy for an hour or so. Minor testified that her bottom hurt for a couple of weeks after the incident. She also testified that, while in school on the day following the incident, she could not sit on the hard student chairs, that one of her teachers let her use the padded teacher's chair, and that, in her other classes, she just stood.

On the day following the incident, May 20, 1993, Minor was sent by a teacher to the office of the school health aide, Shirley Yamaguchi, because she complained of being unable to sit down. Yamaguchi observed that Minor waddled stiffly as though she was in extreme pain, was very emotional, and was unable to sit at the desk, where she customarily talked with students. Minor told Yamaguchi that she got a spanking from her "stepfather," Crouser, because of her grades. Yamaguchi called the school counselor, Diane

---

**2.** HRS § 703–309 provides in relevant part that:

The use of force upon or toward the person of another is justifiable under the following circumstances:

(1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor, or a person acting at the request of the parent, guardian, or other responsible person, and:

(a) The force is employed with due regard for the age and size of the minor and is

reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct; and

(b) The force used is not designed to cause or known to create a risk of causing substantial bodily injury, disfigurement, extreme pain or mental distress, or neurological damage.

McCary, into the office, and Yamaguchi and McCary observed that Minor's buttocks were bruised and colored a deep reddish-purple. They also observed bruising to Minor's arm, thigh, and torso, which Minor explained had occurred when she was moving around to try to block the blows from the bat. Yamaguchi testified that, of the approximately eighty to one hundred children who had come to her attention for discipline injuries, Minor's was the worst case she had seen. She further testified that, when Minor began describing what had happened to her, she cried uncontrollably, "a deep sobbing hurt kind of cry like a cry that's been held in for a while." At trial, McCary similarly testified.

Marilyn Hagoes, the unit supervisor of the crisis intake and investigation unit of Child Protective Services, Department of Human Services, was called to investigate and assess the incident. There is some conflict in the record concerning the date on which she interviewed Minor; however, it appears to have been on May 21, 1993. Hagoes testified that she observed bruising on Minor's legs, arms, and side, but did not ask to see the bruising on Minor's buttocks because it had already been photographed. Hagoes testified that, in her opinion, Minor's injuries were within the definition of "harm" set forth in HRS chapter 587, which is the statutory criterion governing her department's investigations and assessments.

Hagoes further testified that she interviewed Crouser on May 27, 1993. She showed Crouser the photographs of Minor and asked him how the bruising got there. According to Hagoes, Crouser told her that he "worked [Minor's] butt," explaining that he hit her about twenty-five times on the buttocks, mostly with his hand and some with a plastic bat. Crouser also advised Hagoes that he wanted to make it hard for her to sit down, but, when asked about the bruising to Minor's arm, torso, and leg, Crouser stated that those bruises were self-inflicted. Hagoes also testified that, in her ten years of experience, she had never seen such extensive bruising in a parental discipline case and that she considered the discipline excessive and not reasonably related to the purpose of safeguarding or promoting the welfare of a minor, including the punishment of misconduct.

Dr. Wesley Sugai testified that he had ordered blood tests on Minor, and the results of those tests showed that Minor did not have any abnormal characteristics that would make her susceptible to easy bruising. He testified that, in his opinion, "the amount of injury inflicted did cause a significant amount of pain, probably lots of psychological trauma from the beating, but, fortunately, no permanent disfigurement." Dr. Sugai further testified that the force used in this case created a risk of substantial bodily injury.

The prosecution also elicited testimony from Detective Bradley Ballesteros, Sr., who testified that he had interviewed Crouser on May 28, 1993. According to Ballesteros, Crouser admitted that the photos of Minor's injuries looked "pretty serious" but that he did not feel that he had gone beyond reasonable discipline, and the incident had been blown out of proportion.

Attorney Darl Gleed, guardian *ad litem* for Minor in family court, testified that Crouser had told him, prior to a court hearing, that Minor's punishment was twenty-five swats on one side of her buttocks and thirty-five on the other. According to Gleed, Crouser later clarified his statement by saying that he only spanked Minor twenty-five times on one side, leaving the other side untouched so that she could sit down, and meant to get around to the other thirty-five swats later.

Minor's foster mother, Bonnie Pond, testified at trial that Minor had been living in her home for seven or eight months, and, during that time, she had never had to physically discipline Minor, although she had spanked her own children. She testified that Minor is not a difficult child to deal with and does anything asked of her and more. She also testified that, although Minor lied at times, it was never for her benefit, but more of a fantasy.

The only witness called by the defense was Minor's mother (Mother). Mother testified that she had arrived home from work early on the afternoon of May 19, 1993 and was sitting about fifteen feet from Minor's room on an outside deck, with a clear view of the

incident. She testified that Crouser did not hit Minor in the face and that Minor was not knocked to the floor. According to Mother, Minor got on the bed herself. She admitted that Crouser spanked Minor, but testified that he did not remove Minor's pants or put his knee into her back. She also testified that Crouser spanked only the right side of Minor's buttocks, but not excessively, and, if it had been excessive, that she "would have stopped it immediately." In Mother's view, "[Crouser] wasn't using any force on Minor that day." When shown the prosecution's exhibits depicting the extensive bruising of Minor's buttocks, Mother testified that she did not think that Crouser's spanking of Minor caused the bruises.

The court orally ruled on October 13, 1994. After reciting the requirements of HRS § 703–309, the court announced its findings:

Here, the Court finds that the State has proven each element of the charge beyond a reasonable doubt and has proven beyond a reasonable doubt that the force used was not reasonably related to the purpose of safeguarding the welfare of the minor and it was designed to cause or known to create a risk of causing substantial bodily injury or mental distress.

The court then reviewed the testimony and the exhibits and concluded as follows:

[T]he Court will find, based upon the evidence presented and also Exhibits 3 through 10 are noted, the Court will find that the State has proven beyond a reasonable doubt that the defendant is guilty of the offense of Abuse of Family or Household Member.

Crouser was sentenced on November 17, 1994 and filed his timely notice of appeal on December 2, 1994.

## II. *DISCUSSION*

1. *The trial court's conclusion was not clearly erroneous.*

Crouser argues that the trial court clearly erred in finding that the force used was not reasonably related to the purpose of safeguarding or promoting Minor's welfare, including the prevention or punishment of her misconduct, and that the use of force was designed to cause or known to create the risk of causing substantial bodily injury, extreme pain or mental distress. These are conclusions of law (COL), presenting mixed questions of fact and law. "[A] COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each case." *State v. Furutani*, 76 Hawai'i 172, 180, 873 P.2d 51, 59 (1994) (citation and internal quotation marks omitted). Under the clearly erroneous standard, a trial court's decision will not be reversed unless, based upon the entire evidence in the record, the appellate court is left with the definite and firm conviction that a mistake has been made. *Id.* at 179, 873 P.2d at 58. Based on our review of the record, including the photographs of Minor's injuries, we are not "left with a definite and firm conviction that a mistake [was] made [in this case]." *Id.*

Crouser was charged with abuse of a family or household member, in violation of HRS § 709–906. His conviction required proof beyond a reasonable doubt of each of the following three elements: (1) that he physically abused Minor; (2) that he did so intentionally, knowingly or recklessly;[3] and (3) that Minor was a present or former family or household member of Crouser's. To invoke the defense of justification under HRS § 703–309,[4] Crouser was required to make a showing that the record contained evidence supporting the following elements: (1) he was a parent, guardian, or other person as described in HRS § 703–309(1); (2) he used force against a minor for whose care and supervision he was responsible; (3) his use of force was with due regard to the age and size of the recipient and reasonably related to the purpose of safeguarding or pro-

---

**3.** HRS § 709–906 does not specify the requisite state of mind for the commission of the offense. HRS § 702–204 (1993), however, provides in relevant part that, "[w]hen the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly."

**4.** *See supra* note 2.

moting the welfare of the minor, including the prevention or punishment of misconduct; and (4) the force used was not designed to cause, or known to create a risk of causing, substantial bodily injury, disfigurement, extreme pain or mental distress, or neurological damage. *See State v. Kaimimoku,* 9 Haw.App. 345, 349–50, 841 P.2d 1076, 1079 (1992). In turn, the prosecution had the burden of disproving beyond a reasonable doubt the justification evidence that was adduced, or proving beyond a reasonable doubt facts negativing the justification defense. *Id.* at 350, 841 P.2d at 1079. Because the requirements of HRS § 703–309(1) are set out in the conjunctive, rather than the disjunctive, the prosecution needed only to disprove one element beyond a reasonable doubt to defeat the justification defense.

### a. The use of force was not reasonably related to the purpose of safeguarding Minor's welfare.

As previously indicated, the trial court found that

> the State has proven each element of the charge beyond a reasonable doubt and has proven beyond a reasonable doubt that the force used was not reasonably related to the purpose of safeguarding the welfare of the minor *and* it was designed to cause or known to create a risk of causing substantial bodily injury or mental distress.

(Emphasis added).

Relying on *Kaimimoku,* Crouser argues that the family court's conclusion that his use of force was not reasonably related to the purpose of safeguarding or promoting Minor's welfare was clearly erroneous. In *Kaimimoku,* the Intermediate Court of Appeals (ICA) reversed the defendant's conviction of abuse of a family member based upon the the purpose prong of the "parental justification" defense, HRS § 703–309(1)(a). The testimony in *Kaimimoku* established that a father had slapped his seventeen-year-old daughter in the face and struck her with a closed fist on her shoulder. The ICA ruled that, where "Father testified that he used force on Daughter to punish her for yelling profanities at him, disobeying him, and being disrespectful," and Daughter admitted the misconduct, "[t]here [was] no evidence on the record that Father struck Daughter for any purpose other than for punishment. Therefore, the third part of Father's justification defense has been met." *Id.* at 352, 841 P.2d at 1080.

Crouser claims that, as in *Kaimimoku,* there is no evidence in the present case that his use of force was for any other purpose than punishment. We note that, when *Kaimimoku* was decided, HRS § 703–309(1)(a) required supporting evidence that "[t]he force is used for the purpose of safeguarding or promoting the welfare of the minor, including prevention or punishment of his misconduct." HRS § 703–309(1)(a) (1985). In 1992, however, the statute was amended to require that, "[i]n determining whether or not the level of force used is permitted under law, a court must consider the age and size of the recipient and whether a *reasonable* relationship exists between the force used and a legitimate purpose as specified in the statute." Hse.Conf.Comm.Rep. No. 103, in 1992 House Journal, at 843 (emphasis added).

Crouser contends that the amendment "liberalized the purpose requirement." According to Crouser, "[i]nstead of requiring that the force used [be] for punishment, the 1992 amendment only requires that the force used [be] reasonably related to the purpose of punishment." Therefore, he argues, the court's conclusion that Crouser's use of force was not reasonably related to protecting Minor's welfare was clearly erroneous. Crouser's interpretation of the effect of the amendment is specious.

■ HRS § 703–309(1) (1985) was adopted verbatim from section 3.08(1) of the Model Penal Code, the commentary to which was extensively quoted in *Kaimimoku:*

> The formulation is in some respects less stringent than that in Section 147 of the Restatement of Torts, which speaks of "such reasonable force" and "such reasonable confinement" as the parent "reasonably believes to be necessary for" the

"proper control, training, or education" of the child. . . .[5]

The formulation also differs from the Restatement in not explicitly demanding that the force be reasonable. It was believed that so long as a parent uses moderate force for permissible purposes, the criminal law should not provide for review of the reasonableness of the parent's judgment.

9 Haw.App. at 351, 841 P.2d at 1079. The 1992 amendments significantly altered this formulation. It is no longer enough that the use of force be for the purpose of discipline; it must be reasonably related to that purpose. The present version of HRS § 703–309(1), unlike the statute at issue in *Kaimimoku*, provides for objective review of the parent's judgment, bringing the statute much closer to the formulation found in the *Restatement (Second) of Torts* § 147 and that used by a substantial majority of other jurisdictions. *See* Annotation, *Criminal Liability for Excessive or Improper Punishment Inflicted on Child by Parent, Teacher, or One in Loco Parentis*, 89 A.L.R.2d 396 (1963 & Supp.1995).

 Although we have found no other statute employing the identical language, it seems clear that to be "reasonably related" to the purpose of punishing misconduct, use of force must be both reasonably proportional to the misconduct being punished and reasonably believed necessary to protect the welfare of the recipient. Subsection (b) of HRS § 703–309(1) defines the maximum degree of force that is justifiable under the statute. Subsection (a), as amended, makes clear that physical discipline may be so excessive that it is no longer reasonably related to safeguarding the welfare of the minor, even if it does not exceed the bounds set in subsection (b). .

In this case, the family court noted that it "must judge the action based upon the reasonable hand standard or reasonable person standard." Considering (1) Minor's age and her size relative to Crouser's, (2) the testimony that the force was excessive and caused her to be unable to sit in her classes, (3) the nature of the injuries as depicted by the photos, (4) the medical testimony, and, in particular, (5) Pond's testimony that she was able to help Minor improve her grades significantly and stop lying without resort to physical force, the court concluded that the physical discipline Minor endured was not reasonably related to the purpose of protecting her welfare. There is nothing in the record that leads us to a "definite and firm conviction that a mistake has been made." Therefore, we hold that the trial court's conclusion that the force used was not reasonably related to protecting Minor's welfare was not clearly erroneous. Consequently, Crouser's contention that "[t]here was insufficient evidence to support the verdict in the instant case because the Prosecution failed to negative the justification defense of parental discipline" is without merit.

b. **Crouser's beating of Minor was designed to cause, or known to create a risk of causing, substantial bodily injury, extreme pain, or mental distress.**

 Crouser asserts that, because the force he used on Minor did not exceed the level applied in *State v. Deleon*, 72 Haw. 241, 813 P.2d 1382 (1991), and in *Kaimimoku*, it was justifiable under HRS § 703–309(1)(b). In *Deleon*, the trial court convicted the defendant based upon its finding that he was guilty of causing "extreme pain" when he struck his fourteen-year-old daughter six to ten times with a folded belt above the knee and over her pants. The daughter had testified that "she felt a little pain, that the spanking stung her, and that the pain lasted

5. *Restatement (Second) of Torts* § 147 (1965) provides that:
 (1) A parent is privileged to apply such reasonable force or to impose such reasonable confinement upon his child as he reasonably believes to be necessary for its proper control, training, or education.
 (2) One other than a parent who has been given by law or has voluntarily assumed in whole or in part the function of controlling, training, or educating a child, is privileged to apply such reasonable force or to impose such reasonable confinement as he reasonably believes to be necessary for its proper control, training, or education, except in so far as the parent has restricted the privilege of one to whom he has entrusted the child.

an hour and a half. She had bruises for about a week. She cried for half an hour." *Id.* at 242, 813 P.2d at 1383. Because the phrase "extreme pain" was not defined in the statute, this court employed "an ancient canon of construction," *noscitur a sociis,*[6] and reasoned that the pain inflicted did not come anywhere near, in degree, the other statutorily forbidden results. Thus, we held that the defendant's conduct was justified under HRS § 703–309(1) and reversed the conviction. *Id.* at 244–45, 813 P.2d at 1383–84. We note that, at the time *Deleon* was decided, the other prohibited results were death, serious bodily injury, disfigurement, extreme mental distress, or gross degradation. *Id.*

In *Kaimimoku,* the father had slapped his daughter's face and punched her shoulder, leaving a scratch and a bruise, and causing some pain of unknown duration. Applying the *Deleon* analysis, the ICA held that the prosecution had not overcome the defendant's parental discipline justification defense. 9 Haw.App. at 353, 841 P.2d at 1080.

▆ As previously stated, HRS § 703–309(1) was amended in 1992 for the express purpose of "reduc[ing] the permitted level of force that a person responsible for the care of a minor ... may use." Hse.Conf.Comm. Rep. No. 103, in 1992 House Journal, at 843. In order to accomplish the purpose, "the standard of harm [was] lowered by lowering the level of risk, and reducing the permissible level of injury to that which is less than "substantial" as defined in section 707–700 of the Hawaii Penal Code." Sen.Stand.Comm. Rep. No. 2208, in 1992 Senate Journal, at 1023. The changes made reflect the legislature's concern with results of the *noscitur a sociis* analysis employed in *Deleon.* "Death" and "gross degradation" were removed from the enumerated prohibited results because "the lower threshold makes [them] surplusage and [their] elimination removes the risk of other words in that paragraph being interpreted 'noscitur a sociis' with ... term[s] that [are] not pertinent to the lower threshold." Sen.Stand.Comm.Rep. No. 2493, in 1992 Senate Journal, at 1121; Hse.Conf.

Comm.Rep. No. 2613, in 1992 House Journal, at 843. "As a result of these changes, the terms retained from the prior law must be reinterpreted by the courts, since the changes affect the application of the rule of construction applied in *State v. Deleon,* 72 Haw. 241, 813 P.2d 1382 (1991)." Sen.Stand. Comm.Rep. No. 2493, in 1992 Senate Journal, at 1121 (parenthetical omitted).

▆ Reinterpreting "extreme pain" in light of the reduced level of force permitted by the amendments, we cannot say that the trial court clearly erred when it found that the use of force caused Minor extreme pain. The permissible level of injury was reduced to that which is less than "substantial bodily injury," which is defined as:

bodily injury which causes:

(1) a major avulsion, laceration, or penetration of the skin;

(2) a chemical, electrical, friction, or scalding burn of second degree severity;

(3) a bone fracture;

(4) a serious concussion; or

(5) a tearing, rupture, or corrosive damage to the esophagus, viscera, or other internal organs.

HRS § 707–700 (1993). Interpreting "extreme pain" *noscitur a sociis* with substantial bodily injury, we believe Minor's pain was comparable in degree to the other statutorily forbidden results, such as a laceration of the skin or a burn of second degree severity. Unlike *Deleon,* where the testimony was that there was "a little pain" for about an hour and a half, or *Kaimimoku,* where the pain was of unknown degree or duration, the testimony in this case was that Minor was in extreme pain for days and unable to sit without pain for weeks. Therefore, we hold that the court's conclusion that "the injuries inflicted by the defendant [were] designed to cause or ...—known to create a risk of substantial bodily injury, extreme pain or mental distress" was not clearly erroneous.

---

6. "Noscitur a sociis" is Latin for "it is known from its associates." *Black's Law Dictionary* 1060 (6th ed. 1990). Under the doctrine of *nos-* *citur a sociis,* the meaning of words or phrases in a statute may be determined by reference to the meaning of words or phrases associated with it.

2. *Section 703–309(1) is neither vague nor overbroad.*

 When confronted with a constitutional challenge of a penal statute on the grounds of vagueness or overbreadth, we apply a number of principles on appeal. First,

> [t]he constitutionality of a statute is a question of law which is reviewable under the right/wrong standard. Additionally, where it is alleged that the legislature has acted unconstitutionally, this court has consistently held that every enactment of the legislature is presumptively constitutional, and a party challenging the statute has the burden of showing unconstitutionality beyond a reasonable doubt. The infraction should be plain, clear, manifest, and unmistakable.

Second, we construe penal statutes narrowly, considering them in the light of precedent, legislative history, and common sense....

Third, where possible, we will read a penal statute in such a manner as to preserve its constitutionality.

*State v. Gaylord,* 78 Hawai'i 127, 137–38, 890 P.2d 1167, 1177–78 (1995) (citations omitted).

> Due process of law requires that a penal statute state with reasonable clarity the act it proscribes and provide fixed standards for adjudging guilt, or the statute is void for vagueness. *State v. Kameenui,* 69 Haw. 620, 621, 753 P.2d 1250, 1251 (1988). Statutes must give the person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited so that he or she may choose between lawful and unlawful conduct. *Id.*

*State v. Tripp,* 71 Haw. 479, 482, 795 P.2d 280, 282 (1990). Vagueness is an oft-raised challenge to statutes criminalizing child abuse. *See* Annotation: *Validity and Construction of Penal Statute Prohibiting Child Abuse,* 1 A.L.R.4th 38 (1980 & Supp.1995). Crouser's challenge, however, is unique in that he does not take issue with the constitutionality of the penal statute that he was found to have violated, that is, HRS § 709–906 (abuse of a family or household member), which this court has previously held is not unconstitutionally vague. *See State v. Kameenui,* 69 Haw. 620, 621, 753 P.2d 1250, 1251 (1988). Curiously, he argues that HRS § 703–309(1) is impermissibly vague.

 First, we note that HRS § 703–309(1) is not a "penal statute," but rather defines the "parental justification" *defense* to the penal statute. Second, if we were to agree with him that HRS § 703–309(1) is void for vagueness, Crouser would be left without the parental justification defense. Nevertheless, we need not void HRS § 703–309(1) because we hold that it describes, with sufficient clarity, the level of force that may justifiably be used in the discipline of a minor.

 Society recognizes the primary role of parents in preparing children to assume the obligations and responsibilities of adulthood, and it is well-established that parents have a privilege to subject children to reasonable corporal punishment. *Restatement (Second) of Torts* § 147. On the other hand, child abuse is a serious and widespread problem, and the state has a powerful interest in preventing and deterring the battering of children. Section 703–309(1) represents the balance struck by the legislature between these competing interests. Crouser's argument, essentially, is that the line between these competing interests was not drawn clearly enough because the terms used are not defined.

In *Kameenui,* the court explained that the absence of a definition for the term "physical abuse" did not render HRS § 709–906 void for vagueness, stating:

> An ordinary reading of the statute gives sufficient notice to the Defendants that their conduct was prohibited. In a matter as complex as the physical abuse of household members, to require the legislature to list every type of conduct covered under the statute would be counter-productive.

69 Haw. at 622–23, 753 P.2d at 1252. Although the legislature has not exhaustively enumerated the specific injuries that would constitute unjustified use of force against a minor in the name of discipline, HRS § 703–309(1) gives the person of ordinary intelligence a reasonable opportunity to know

what conduct is justified. The phrases (1) "reasonably related to the purpose of safeguarding or promoting the welfare of the minor," (2) "designed to cause or known to create a risk of causing," (3) "substantial bodily injury," and (4) "extreme pain or mental distress" are at least as clear as the term "physical abuse" and sufficiently precise to notify Crouser that the law prohibits use of force that causes extensive bruising and prevents sitting at school for days. In *Kaimimoku*, the ICA stated that, "as long as parents use moderate force for permissible purposes in disciplining their children and do not create a substantial risk of the excessive injuries specified in subsection (1)(b), they will not be criminally liable." 9 Haw.App. at 352, 841 P.2d at 1080. The 1992 amendments to HRS § 703–309(1) did not change the clarity of the law; they simply provided a more objective standard and reduced the permissible level of force. An ordinary reading of HRS § 703–309(1) gives sufficient notice to a reasonable person that there are limits to both the purpose and degree of force that may justifiably be used against a minor and defines those limits with reasonable clarity. Thus, the statute cannot be said to be unconstitutionally vague.

Crouser also argues that HRS § 703–309(1) is overbroad because it proscribes constitutionally protected conduct as well as unprotected conduct. The argument is without merit. The law long ago abandoned the view that children are essentially chattels of their parents without independent legal rights. Crouser points to no constitutional provision that protects his right to inflict upon a child, especially one not his own, force that the legislature has deemed to be excessive and harmful to the child's welfare.

### III. *CONCLUSION*

Based on the foregoing, we hold that: (1) the family court's conclusion that Crouser's conduct was not justified under HRS § 703–309 was not clearly erroneous; (2) there was sufficient evidence to support Crouser's conviction; and (3) HRS § 703–309(1) is not unconstitutionally vague or overbroad. Consequently, we affirm the trial court's judgment convicting Crouser of abuse of a household member, in violation of HRS § 709–906.