**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000939
31-MAY-2022
08:10 AM
Dkt. 49 SO**

NO. CAAP-18-0000939

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
AARON K. MERSBERG, Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NO. 1FFC-18-0000686)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, and Wadsworth and Nakasone, JJ.)

Defendant-Appellant Aaron K. Mersberg (**Mersberg**) appeals from the Judgment of Conviction and Sentence; Notice of Entry (**Judgment**), entered on November 9, 2018, in the Family Court of the First Circuit (**Family Court**).[1] Following a jury trial, Mersberg was convicted of Violation of an Order of Protection, in violation of Hawaii Revised Statutes (**HRS**) § 586-11(a), and sentenced pursuant to HRS § 586-11(a)(1)(A).[2] The

---

[1] The Honorable Rowena A. Somerville presided.

[2] HRS § 586-11(a) (Supp. 2017) provides, in relevant part:

> (a) Whenever an order for protection is granted pursuant to this chapter, a respondent or person to be restrained who knowingly or intentionally violates the order for protection is guilty of a misdemeanor. . . . The court additionally shall sentence a person convicted under this section as follows:
>
> > (1) For a first conviction for violation of the order for protection:
> >
> > > (A) That is in the nature of non-domestic abuse, the person may be sentenced to a jail sentence of forty-eight hours and be fined not more than $150; provided that the court shall not sentence a defendant

charge stemmed from an incident in which Mersberg allegedly went to the residence of his estranged wife and their minor children in violation of an October 9, 2017 Order for Protection (**Order for Protection** or **Order**), and the alleged violation was "in the nature of non-domestic abuse."

On appeal, Mersberg contends that: (1) the Family Court abused its discretion in failing to redact all references to "abuse" in the copy of the Order for Protection that was submitted to the jury; and (2) there was no substantial evidence to support Mersberg's conviction where the Plaintiff-Appellee State of Hawaiʻi (**State**) failed to disprove his choice-of-evils defense beyond a reasonable doubt.[3]

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Mersberg's contentions as follows, vacate the Judgment, and remand for a new trial.

(1) Prior to trial, Mersberg filed a motion in limine and a supplemental motion in limine. Relevant to this appeal,

---

> to pay a fine unless the defendant is or
> will be able to pay the fine[.]

Mersberg was convicted as charged. The June 7, 2018 Complaint alleged in part: "M[ersberg] is subject to sentencing in accordance with Section 586-11(a)(1)(A) of the [HRS], where the violation of the Order for Protection was in the nature of non-domestic abuse."

[3] The choice-of-evils defense is codified in HRS § 703-302 (2014), which provides, in relevant part:

> (1) Conduct which the actor believes to be necessary
> to avoid an imminent harm or evil to the actor or to another
> is justifiable provided that:
>
> (a) The harm or evil sought to be avoided by such
> conduct is greater than that sought to be
> prevented by the law defining the offense
> charged;
>
> (b) Neither the Code nor other law defining the
> offense provides exceptions or defenses dealing
> with the specific situation involved; and
>
> (c) A legislative purpose to exclude the
> justification claimed does not otherwise plainly
> appear.

The choice-of-evils defense is also referred to as the necessity defense. See State v. Padilla, 114 Hawaiʻi 507, 511, 164 P.3d 765, 769 (App. 2007).

Mersberg sought "[r]edaction of [p]rejudicial information from [the] State's [p]roposed [e]xhibits[,]" pursuant to Hawaiʻi Rules of Evidence (**HRE**) Rules 401 and 403.[4/] Specifically, Mersberg sought redaction of "[a]ny reference to abuse/violence in the Order for Protection," including redaction of the following phrases: (1) "[t]hat the above named Respondent [*i.e.*, Mersberg] be restrained from committing further acts of abuse or threats of abuse"; and (2) "[a] protective order is necessary to prevent domestic abuse or a recurrence of abuse, and is necessary for a period of 1 year(s), which is a reasonable amount of time."

During the November 7, 2018 hearing on Mersberg's motions, the State argued that the language at issue was "not substantially prejudicial considering the probative value[,]" which the State described as "the violation of the protective order and the defendant's state of mind, the gravity of the order for protection, which would go to the defendant's state of mind on how carefully he paid attention and the seriousness of the order." The State also argued that "[t]he jury should be able to consider the document in its entirety, not piecemeal." Mersberg disagreed. As to the first phrase quoted above, Mersberg argued that the language was "substantially prejudicial" and "clearly implies that there is abuse." The court concluded that the word "further" was more prejudicial than probative, but also took into account the State's completeness argument in ruling: "I will just take out that word 'further' and leave the rest in." As to the second phrase quoted above, the court ruled that the words "or a recurrence of abuse" would be redacted. Mersberg "strong[ly] object[ed,]" arguing "that the language implies that there is ongoing abuse and . . . is substantially prejudicial."

_____

[4/] HRE Rule 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

HRE Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

On appeal, Mersberg contends that the Family Court abused its discretion in failing to redact the two references to "abuse" that remained in the copy of the Order for Protection that was submitted to the jury. First, Mersberg argues that the references to "abuse" in the Order were not relevant evidence pursuant to HRE Rule 401, and that the only relevant content of the order was the provision that "prohibited [Mersberg] from coming or passing within 100 yards of any residence or place of employment or school of the minor children." Second, Mersberg argues that, pursuant to HRE Rule 403, "[e]ven if the references to 'abuse' were somehow relevant, any minimal and tangential relevance was substantially outweighed by the danger of unfair prejudice."

We find the latter argument dispositive. Under HRE Rule 403, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." "This balance is predicated upon an assessment of 'the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence will probably rouse the jury to overmastering hostility.'" State v. Uyesugi, 100 Hawaiʻi 442, 463, 60 P.3d 843, 864 (2002) (quoting State v. Bates, 84 Hawaiʻi 211, 228, 933 P.2d 48, 65 (1997)). We review evidentiary decisions based on HRE Rule 403, which require a "judgment call" on the part of the trial court, for an abuse of discretion. State v. Richie, 88 Hawaiʻi 19, 37, 960 P.2d 1227, 1245 (1998).

Here, Mersberg was charged with Violation of an Order for Protection, which occurs when "a respondent or person to be restrained [] knowingly or intentionally violates the order for protection[.]" HRS § 586-11(a). Additionally, the charge specified that "violation of the Order for Protection was in the nature of non-domestic abuse." At trial, the State argued to the jury that Mersberg violated the provision of the Order that prohibited him from coming or passing within 100 yards of any residence or place of employment or school of the minor children. In opposing Mersberg's motion in limine, the State argued to the court that the provisions of the Order that referenced abuse were

4

relevant to Mersberg's state of mind, but that argument was not made to the jury.  Similarly, on appeal, the State contends that the references to abuse were not prejudicial, but does not explain how they were relevant to Mersberg's state of mind or any other issue at trial.

To the extent that the "abuse" language in the Order had any relevance to Mersberg's state of mind and "how carefully he paid attention [to,] and the seriousness of[,] the [O]rder," other non-prejudicial evidence was available to prove the same point.  See Walsh v. Chan, 80 Hawaiʻi 212, 217, 908 P.2d 1198, 1203 (1995) (explaining that "the availability and quality of other evidence tending to prove the same point" is one factor in determining probative value) (quoting A. Bowman, Hawaii Rules of Evidence Manual § 403-2A at 81 (1990)).  For example, the "Certification" provision of the Order stated:

> The terms and conditions of this Order were explained by the Court to the parties in open court.  The parties acknowledged that they understood the terms and conditions of the Order and the possible criminal sanctions for violating it.

Likewise, the Order stated:

> ANY VIOLATION OF THIS PROTECTIVE ORDER IS A MISDEMEANOR, WHICH IS PUNISHABLE BY IMPRISONMENT UP TO ONE YEAR AND/OR A FINE OF UP TO $1,000 PURSUANT TO H.R.S. § 586-11.

Thus, to the extent that the references to abuse had any probative value, the value was low, because the alleged violation did not require proof of the reasons for entry of the Order, and there was other non-prejudicial evidence tending to prove the point that the State sought to prove with the abuse language.

On the other hand, the possible inference that Mersberg had committed domestic abuse had a potential to "rouse the jury to overmastering hostility" toward him.  See State v. Lavoie, 145 Hawaiʻi 409, 426, 453 P.3d 229, 246 (2019) ("[G]iven the justifiable stigma attached to domestic abusers in the eyes of the public, evidence that Lavoie had committed domestic abuse was highly likely to 'rouse the jury to overmastering hostility' towards him." (quoting State v. Renon, 73 Haw. 23, 38, 828 P.2d 1266, 1273 (1992))); see also State v. Feliciano, 149 Hawaiʻi

5

365, 377, 489 P.3d 1277, 1289 (2021) ("Here, even if the chair incident evidence had any probative value, its probative value was substantially outweighed by its potential for unfair prejudice. The jury could have inferred that Feliciano had physically abused the [complaining witness] in the past by pushing her out of a chair and acted in the same manner when he struck the [complaining witness] in the face in the charged offense."). And although the State did not emphasize the abuse language to the jury, the State's closing argument did urge the jury to "read through the protective order."

Thus, even assuming that the references to abuse in the Order had some marginal probative value, these references should have been excluded via redaction under HRE Rule 403, because their value was substantially outweighed by the danger of unfair prejudice. Accordingly, we conclude that the Family Court abused its discretion in failing to redact the references to "abuse" in the Order for Protection.

"When such an abuse of discretion is identified, it is grounds to vacate a conviction unless it is harmless beyond a reasonable doubt." State v. Gallagher, 146 Hawaiʻi 462, 470, 463 P.3d 1119, 1127 (2020) (citing State v. Kazanas, 138 Hawaiʻi 23, 43, 375 P.3d 1261, 1281 (2016)). "In applying the harmless beyond a reasonable doubt standard[,] the court is required to examine the record and determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction." Id. at 481, 463 P.3d at 1138 (quoting State v. Mundon, 121 Hawaiʻi 339, 368, 219 P.3d 1126, 1155 (2009)).

Here, Mersberg did not deny passing within 100 yards of the minor children's residence, but raised a choice-of-evils defense based on his asserted belief that his conduct was necessary to avoid an imminent harm to his son, JM. Mersberg's credibility was central to this defense. See State v. Duncan, 101 Hawaiʻi 269, 278, 67 P.3d 768, 777 (2003) (finding a reasonable possibility that an erroneous admission of testimony impeaching a defendant's credibility contributed to the defendant's conviction where his "credibility was the linchpin of his defenses of duress and choice of evils."); see also Lavoie,

145 Hawaiʻi at 428, 453 P.3d 229 at 248 ("On this evidentiary record, there is a clear possibility that any impermissible inferences that the jury made from the wrongfully admitted prior instances of abuse colored their evaluation of [the defendant's] defenses of lack of penal responsibility and EMED.").

On this record, there is a reasonable possibility that the Family Court's error might have contributed to Mersberg's conviction. We thus conclude that the error was not harmless beyond a reasonable doubt and Mersberg's conviction must be vacated.

(2) Mersberg also contends that there was no substantial evidence to support his conviction, because the State failed to prove beyond a reasonable doubt that his violation of the Order for Protection was not legally justified by the choice-of-evils defense.

We review the sufficiency of evidence to support a conviction as follows:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution . . . ; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Williams, 146 Hawaiʻi 62, 76, 456 P.3d 135, 149 (2020) (quoting State v. Richie, 88 Hawaiʻi 19, 33, 960 P.2d 1227, 1241 (1998)). "Substantial evidence . . . is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. Under such a review, we give full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact." State v. Bowman, 137 Hawaiʻi 398, 405, 375 P.3d 177, 184 (2016) (quoting State v. Grace, 107 Hawaiʻi 133, 139, 111 P.3d 28, 34 (App. 2005)).

As to Mersberg's choice-of-evils defense, the burden was on the State "to disprove the justification evidence that was adduced or to prove facts negativing the justification defense, and to do so beyond a reasonable doubt." State v. Stice, No. 28709, 2008 WL 4120057, at *3 (Haw. App. Sept. 5, 2008) (Mem.

Op.) (quoting <u>State v. Kaimimoku</u>, 9 Haw. App. 345, 350, 841 P.2d 1076, 1079 (1992)).  The State satisfies this burden "when the trier of fact believes the prosecution's case and disbelieves the defense."  <u>State v. Jhun</u>, 83 Hawaiʻi 472, 483, 927 P.2d 1355, 1366 (1996).  For the choice-of-evils defense to apply, the defendant must reasonably believe their conduct is "necessary to avoid an imminent harm or evil[.]"  HRS § 703-302; <u>see</u> <u>State v. Friedman</u>, 93 Hawaiʻi 63, 71, 996 P.2d 268, 276 (2000); <u>see</u> <u>also</u> <u>State v. Kauhane</u>, 145 Hawaiʻi 362, 371, 452 P.3d 359, 374 (2019) ("[A]lthough [the defendant's] belief had to be objectively reasonable, it was also necessary that [the defendant], in fact, subjectively held such a belief.").

Here, the evidence at trial bearing on Mersberg's choice-of-evils defense included the following.  The incident at issue occurred on the night of June 1, 2018, and into the early morning hours of June 2, 2018.  Mersberg and his estranged wife, the complaining witness (**CW**), had been living separately.  CW had physical custody of their three adopted children, ages fifteen, eleven, and eight at the time of trial, while Mersberg and CW shared legal custody and Mersberg had visitation rights.  On June 1, 2018, CW picked up the three children from visitation with Mersberg.  Mersberg testified that after CW and the children returned home, JM, aged eleven, called Mersberg and said, "dad, I need your help"; he sounded "[p]retty distraught."  JM then "started telling [Mersberg] that he was locked out of the house again and things like that."  Mersberg's initial response was that JM was "overreacting" and "trying to get attention."  "But then from the background [CW] started yelling, you need to come get him, come get him now, I'm not letting him back in, that's it, I'm done."

CW, on the other hand, testified that on the night of the incident, following an argument with his brother, JM started crying, wanted to call his father, went into CW's van and got her phone, and then called Mersberg.  CW did not lock JM out of the house.  CW explained:  "[U]sually the routine is . . . [this] was just . . . something that they do. . . .  I told [Mersberg] that this was stuff that they normally do.  It's just attention

getting, or attention seeking type of behavior." At some point after midnight, CW overheard another phone conversation between JM and Mersberg after JM had again called Mersberg. The phone was on speaker, and CW told Mersberg "not [to] come, because there's nothing going on. Um -- this is -- again, to remind him about the TRO, that, um -- he shouldn't be here at the house."

On cross-examination, Mersberg further testified: On the night of the incident, he first received a call from JM at around 11:19 p.m. Mersberg was in town at that time, and it takes "about 25 to 30 minutes" to get from his residence to the area of CW's residence. Mersberg did not leave Honolulu or Kakaʻako "until about probably a little after 1:00." Mersberg explained: "[T]owards the end of the first part of the conversation [JM] became emotional because I was trying to tell him that I needed to make alternate arrangements for some other things and that I needed to take care of that before I could head over . . . ." JM hung up. "So then it was another call, then he came back on and I was able to talk him through and have him calm down long enough that I could get through that conversation and then let him know that I was on my way." Mersberg also testified on direct examination that he "kept thinking at some point I'd get close enough and then I'd get, he's calm, everything's good . . . ."

On this record, we conclude there was substantial evidence from which the jury could reasonably have inferred that there was no threat of imminent harm to JM, and that even if Mersberg subjectively believed that his conduct was necessary to avoid such harm, that belief was not reasonable under the circumstances. See Friedman, 93 Hawaiʻi at 71, 996 P.2d at 276 (concluding that "because there was no threat of imminent harm, the trial court did not err in refusing to consider the choice of evils defense"). For example, the jury could have found CW's version of events, including her testimony that she told Mersberg "not [to] come, because there's nothing going on," credible and Mersberg's version of events not credible. Or the jury could have concluded, based on Mersberg's own testimony regarding his delay in leaving town, that no immediacy existed and he did not

9

reasonably believe that his conduct was necessary to avoid imminent harm to JM.  We decline to pass upon issues regarding the credibility of witnesses and the weight of the evidence, which are within the province of the trier of fact – here, the jury.  See State v. Stocker, 90 Hawaiʻi 85, 90, 976 P.2d 399, 404 (1999); see also Jhun, 83 Hawaiʻi at 483, 927 P.2d at 1366 (the State disproves a justification defense "when the trier of fact believes the prosecution's case and disbelieves the defense").  Viewing the evidence adduced at trial in the strongest light for the State, we conclude there was substantial evidence to negate Mersberg's choice-of-evils defense.

Accordingly, on this record, the evidence was sufficient to support Mersberg's conviction.

For the reasons discussed above, we vacate the Judgment of Conviction and Sentence, entered on November 9, 2018, in the Family Court of the First Circuit, and remand the case for a new trial and for further proceedings consistent with this Summary Disposition Order.

DATED:  Honolulu, Hawaiʻi, May 31, 2022.


On the briefs:

Jon N. Ikenaga,
Deputy Public Defender,
for Defendant-Appellant.

Loren J. Thomas,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge