***FOR PUBLICATION IN WEST'S HAWAI‘I REPORTS AND PACIFIC REPORTER***

**Electronically Filed
Supreme Court
SCWC-12-0000396
24-DEC-2013
07:54 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI‘I

---o0o—

STATE OF HAWAI‘I, Respondent/Plaintiff-Appellee,

vs.

BLADESIN-ISAIAH BAILEY, Petitioner/Defendant-Appellant,

and

ANDREW JOSIAH RODRIGUEZ, Respondent/Defendant.

SCWC-12-0000396

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0000396; CR. NO. 10-1-0819)

December 24, 2013

RECKTENWALD, C.J., NAKAYAMA, ACOBA, McKENNA, AND POLLACK, JJ.

OPINION OF THE COURT BY ACOBA, J.

We hold, first, that proof that any part of an offense occurred on the island of Oahu is sufficient to establish venue in the first judicial circuit. Here, because several witnesses testified that the alleged Kidnapping committed by Petitioner/ Defendant-Appellant Bladesin-Isaiah Bailey (Petitioner) occurred on the island of Oahu, there was sufficient evidence to demonstrate that the first judicial circuit was the correct venue.

Second, we hold that Respondent-Plaintiff/Appellee State of Hawai'i (the State) must prove beyond a reasonable doubt that substantial bodily injury was caused by the defendant in order to disprove the mitigating defense that reduces the offense of Kidnapping, Hawai'i Revised Statutes (HRS) § 707-720(3) (Supp. 2008)[1], from a Class A felony[2] to a Class B felony,[3] because, inter alia, the victim was not suffering from substantial bodily injury when released.

Third, we hold that the State must only disprove one of the three elements of the Class B mitigating defense set forth in HRS § 707-702(3) beyond a reasonable doubt to establish that a defendant is not entitled to the defense. In other words, the

---

[1]     HRS § 707-720 provides in relevant part as follows:

**§ 707-720  Kidnapping.**

(1) A person commits the offense of kidnapping if the person intentionally or knowingly restrains another person with intent to:
. . .
    (e) Terrorize that person or a third person;
. . . .
(2) Except as provided in subsection (3), kidnapping is a class A felony.
(3) In a prosecution for kidnapping, it is a defense which reduces the offense to a class B felony that the defendant voluntarily released the victim, alive and not suffering from serious or substantial bodily injury, in a safe place prior to trial.

(Emphasis added.)

[2]     Kidnapping is a Class A felony.  HRS § 707-720(2).  The court ordinarily must sentence a defendant convicted of a Class A felony to a maximum length of imprisonment of twenty years, without the possibility of suspension of sentence or probation.  HRS § 706-659 (Supp. 1994).  The minimum length of imprisonment is to be determined by the Hawai'i Paroling Authority. Id.

[3]     A defendant convicted of a Class B felony ordinarily must be sentenced to a maximum length of imprisonment of ten years, with the minimum length of imprisonment to be determined by the Hawai'i paroling authority. HRS § 706-660 (1993).

State must establish beyond a reasonable doubt that a defendant did not voluntarily release the victim, or that the defendant caused serious or substantial bodily injury to the victim, or that the victim was not released in a safe place. In this case, Petitioner did not challenge the jury's special interrogatories finding that the victim was not voluntarily released, and that the victim was not released in a safe place. Hence, Petitioner was not entitled to the Class B mitigating defense.

For the reasons stated herein, the August 21, 2013 Judgment of the Intermediate Court of Appeals (ICA)[4] filed pursuant to its July 10, 2013 Summary Disposition Order (SDO), and the March 19, 2012 Judgment of Conviction and Sentence of the Circuit Court of the First Circuit (the court)[5] are affirmed.

I.

A.

On the morning of May 15, 2010, Ezra Kualaau, (Complainant) contacted Andrew Rodriguez (Rodriguez) through several text messages and phone calls, to buy crack cocaine. After picking up Petitioner, the two defendants headed to Complainant's house in a white "Chevy" Impala. Complainant, wearing basketball shorts and no shirt or shoes, joined Petitioner and Rodriguez at a park across the street from his

---

[4]     Chief Judge Craig H. Nakamura and Associate Judges Alexa D.M. Fujise and Lisa M. Ginoza presided.

[5]     The Honorable Karen S.S. Ahn presided.

3

house. Complainant and his mother testified that their house was located on Kaʻahumanu Street in Waiau, on the island of Oʻahu.

Rodriguez sat in the driver's seat, Petitioner in the front passenger's seat, and Complainant in the back seat. After noticing a police car pass by, Petitioner and Rodriguez "looked at each other and then Petitioner went to the trunk." Complainant then started "getting punched[,]" and "whacked on the side of [his] head in [his] temple and then phased out." After getting punched the first time by Petitioner, Complainant testified that he fell onto his left side, at which time Petitioner continued to punch him a couple of more times. Rodriguez then got out of the car and handcuffed Complainant behind his back. Petitioner "grabbed [Complainant] at [his] ankles . . . and they took [him] to the trunk." They closed the trunk with Complainant inside and drove off.

Two witnesses, Renante Lagat (Renante) and his wife Melva Lagat (Melva), were driving on Komo Mai Drive past the Waiau Park and noticed a white car by itself and "saw two guys put an individual in the car[,]" with his hands "bound" at his back. The individual "being thrown into the trunk of the car" was "[a] white male, fairly skinny" with "no shirt." Renante testified that "one of . . . the ones putting the person in the car" was "wearing a red shirt." Honolulu Police Department Officer Donn Manzano (Officer Manzano) also testified that he was patrolling the Pearl City area near Komo Mai Drive on the island

4

of Oahu when he noticed a white vehicle in the parking lot of Waiau District Park.

While in the trunk, Complainant managed to remove his cell phone from his pocket, and texted his mother to tell her that he had been kidnapped. Complainant also called 911. At the end of a cul-de-sac street, the car stopped and the defendants took Complainant out of the trunk. A plastic bag and cloth were put over Complainant's head.

Complainant testified that after pulling him out of the trunk, the two defendants proceeded to walk him up a trail, "or not a trail, but bushes[,]" during which he was "pushed over rocks, through bushes." Complainant further related that Petitioner threatened that Complainant was not to "make noise or I'm gonna put -- or I'm gonna shoot you." At the top of the trail, Petitioner and Rodriguez "sat [him] down and started punching [him] in the face" "multiple times" while the bag was still over Complainant's head, and he was still handcuffed behind [his] back. They then "shoved [Complainant] to the ground[,] . . . ripped the bag off [his] face and ran off." Complainant, after hearing the car door slam, ran back down the trail to get help.

Officer Halama Wong (Officer Wong) was patrolling the Moanalua Valley area of Oahu when she was dispatched to Onipaʻa Street, where Complainant had made a call to the police from a nearby house. When Officer Wong arrived, Complainant was handcuffed and crying, with "abrasions" on his face, chest, and

5

back, as well as what appeared to be a swollen nose. According to Officer Wong, Complainant appeared frightened, and "had a hard time speaking."

Complainant was taken to Kaiser Moanalua Emergency Room by his mother, where he was examined by Dr. Saba Russell (Dr. Russell). During the examination, Dr. Russell observed "multiple contusions and abrasion throughout [Complainant's] extremities, the arms and legs, as well as the face." She also found that he had suffered a nasal bone fracture. The age of the fracture was indeterminable based on the X-ray. However, Dr. Russell opined that the swelling and bruising over the cheek and nose were consistent with characteristics of a new fracture.

While Complainant was being examined for his injuries, Officer Tay Deering (Officer Deering) was dispatched to a possible Kidnapping at Waiau District Park on the island of Oʻahu, but, on the way, observed and stopped a white "Impala" on Salt Lake Boulevard. Officer Legaee Fatu (Officer Fatu), who was with Officer Deering at the time, identified Petitioner as the passenger in the car and noticed that he was wearing a red shirt. Officer Deering identified Rodriguez as the driver of the car. Both Officer Fatu and Officer Deering testified that neither Rodriguez nor Petitioner appeared to have any injuries, and neither complained of having any.

B.

The State indicted Petitioner and Rodriguez on May 20, 2010 on one count of Kidnapping (Count I) and one count of

6

Assault in the Second Degree[6] (Count II):

> COUNT I:  On or about the 15th day of May, 2010, in the City and County of Honolulu, State of Hawaiʻi, [Rodriguez] and [Petitioner], did intentionally or knowingly restrain [Complainant], with intent to terrorize him, . . . thereby committing the offense of Kidnapping, in violation of Section    . . . 707-720(1)(e) of the [HRS].
>
> COUNT II:  On or about the 15th day of May, 2010, in the City and County of Honolulu, State of Hawaiʻi, [Rodriguez] and [Petitioner] did intentionally or knowingly cause substantial bodily injury to [Complainant], and/or did recklessly cause substantial bodily injury to [Complainant], thereby committing the offense of Assault in the Second Degree, in violation of Section 707-711(1)(a) and/or Section 707-711(b) of the [HRS].

(Emphases added.)  Trial began on January 6, 2012.  The witnesses called in the State's case were Complainant, Complainant's mother, Renante, Melva, Dr. Russell, and Officers Fatu, Deering, Wong, and Manzano.

At the close of the State's case, Petitioner moved the court for a judgement of acquittal.  His argument was that the State failed to prove venue.  The court denied Petitioner's motion.  The following discussion occurred:

> [Mr. Luiz (Counsel for Petitioner)]:  Actually, the State never proved venue in this case.  Not one witness from the beginning to the end ever testified that this occurred in the City and County of Honolulu.  No witness was asked that.  As a matter of fact, I kept track of all the witnesses who testified and each officer who testified was never asked if this occurred in the City and County of Honolulu . . . and because venue is absolutely essential that must be proven that this did in fact occur in the City and County of Honolulu and not the County of Maui, the

---

[6]    HRS § 707-711 (provides in relevant part as follows:

**§ 707-711  Assault in the second degree.**

(1) A person commits the offense of assault in the second degree if:
(a) The person intentionally or knowingly causes substantial bodily injury to another;
(b) The person recklessly causes serious or substantial bodily injury to another;
. . .

> County of Big Island. <u>We [are] entitled to a directed verdict on all counts since the State rested without proving venue</u>.
> THE COURT: <u>You know, my notes show that venue was–the venue question was asked of [Complainant] regarding him being in front of his house. And in addition, the venue question was asked of Officer Manzano regarding the Waiau District Park. I'm going to look at the evidence in light more favorable to the Government. I can take judicial notice, I think, of venue, and I do so.</u> But looking at the evidence in the light most favorable to the Government and considering the jury's right to weigh credibility and draw all reasonable inferences of fact I believe a reasonable juror can conclude guilt beyond a reasonable doubt as to Kidnapping and the Assault II with regard to [Petitioner]
> . . . .
> THE COURT: <u>Let me just note that I'm looking at my notes with regard to the venue issue. The venue question was asked of Officer [] Wong as to Onipaʻa Street where [Complainant] was allegedly found . . . I think there's a reasonable inference that that car never left this island, so venue was established.</u> Okay. All right . . .
> [Mr. Luiz]: . . . . I never heard the question on City and County of Honolulu, I heard–
> THE COURT: <u>Well, it just has to be this island</u>.

(Emphases added.)

While Petitioner exercised his right not to testify, Rodriguez did testify. Rodriguez recounted that Complainant contacted him to buy drugs, but that he and Petitioner met Complainant in order to retrieve money that a friend claimed Complainant stole from her. Rodriguez admitted to handcuffing Complainant, putting him in the trunk, as well as driving to Moanalua with Complainant in the trunk of the car, because "that's where [Complainant] said the person who was holding the money was at." Moreover, Rodriguez testified that when he stopped the car and opened the trunk, Complainant jumped out of the trunk and ran into some neighbors' yard; Rodriguez also stated that at that point, he drove away. Rodriguez claimed that he did not place a bag over Complainant's head and he did not walk Complainant up a trail.

8

C.

The court instructed the jury in relevant part as follows:

> In Count 1, [Petitioner] is charged with the offense of Kidnapping.
> . . . .
> There are three material element of the offense of [K]idnapping, each of which the prosecution must prove beyond a reasonable doubt.
> . . . .
>     1.  That, on or about May 15, 2010, in the City and County of Honolulu, State of Hawaiʻi, [Petitioner] restrained [Complainant]; and
>     2.  That [Petitioner] did so intentionally or knowingly; and
>     3.  That [Petitioner] did so with the intent to terrorize [Complainant].
>
> In Count 2, [Petitioner] is charged with the offense of Assault in the Second Degree.
> . . . .
> There are two material elements of the offense of Assault in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.
>     1.  That, on or about May 15, 2010, in the City and County of Honolulu, State of Hawaiʻi, [Petitioner] caused substantial bodily injury[7] to [Complainant]; and
>     2.  That [Petitioner] did so intentionally, knowingly, or recklessly.

As to the lesser included offense of Assault in the Third Degree, the court instructed the jury, in part, as follows:

> In Count 2, as to [Petitioner], if, and only if, you find [Petitioner][] not guilty of Assault in the Second Degree, or you are unable to reach a unanimous verdict as to this offense, then you must consider whether [Petitioner] is guilty or not guilty of the included offense of Assault in the Third Degree.
> A person commits the offense of Assault in the Third Degree if he intentionally, knowingly, or recklessly causes bodily injury to another person.
> There are two material elements of the offense of Assault in

---

[7]    "Substantial bodily injury" is defined as bodily injury which causes "(1) A major avulsion, laceration, or penetration of the skin; (2) A burn of at least second degree severity; (3) A bone fracture; (4) A serious concussion; or (5) A tearing, rupture, or corrosive damage to the esophagus, viscera, or other internal organs."  HRS § 707-700 (Supp. 2008).

the Third Degree,[8] each of which the prosecution must prove beyond a reasonable doubt.
. . . .
1. That, on or about May 15, 2010, in the City and County of Honolulu, State of Hawaiʻi, [Petitioner] caused bodily injury[9] to [Complainant]; and
2. That [Petitioner] did so intentionally, knowingly, or recklessly.

As to accomplice liability, the court's instructions stated in relevant part as follows:

A defendant charged with committing an offense may be guilty because he is an accomplice of another person in the commission of the offense. The prosecution must prove accomplice liability beyond a reasonable doubt.
A person is an accomplice of another in the commission of an offense if, with the intent to promote or facilitate the commission of the offense, he aids or agrees or attempts to aid the other person in the planning or commission of the offense.
Mere presence at the scene of an offense or knowledge that an offense is being committed, without more, does not make a person an accomplice to the offense. However, if a person plans or participates in the commission of an offense with the intent to promote or facilitate the offense, he is an accomplice to the commission of the offense.

(Emphases added.)

D.

In his closing argument, the prosecutor asserted that Complainant suffered substantial bodily injury when the punches to his face fractured his nose:

[The prosecutor]: There's [] no dispute that [Complainant] was found on Onipaʻa Street still handcuffed, Officer Wong told you that. [Complainant] was crying. He had scratches

---

[8] HRS § 707-712 provides in relevant part as follows:

**Assault in the third degree.**

(1) A person commits the offense of assault in the third degree if the person:
    (a) Intentionally, knowingly, or recklessly causes bodily injury to another person; or
    . . . .
(2) Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor.

[9] "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." HRS § 707-700.

and cuts, not only to his facial area which corroborated the punches that he got but also to his body and the shoulder and the body area.

What's also undisputed is that this is how [Complainant] looked when he was found on Onipaʻa Street with a swollen nose, the scratches and cuts on his face as well as the swollen wrist where Officer Wong told you that's the result after he took off the handcuffs from [Complainant] on Onipaʻa Street.

There's also no dispute that he did suffer the substantial bodily injury.  Doctor told you that there was a bone fracture; that that bone fracture was consistent with the swollen nose injury that she observed on [Complainant] on May 15th, 2010.

After reading the x-ray, she told you that it was a nasal bone fracture.  Although, as she testified, because of the nature of the fracture on the nasal bone she couldn't tell exactly when that bone was broken.  [Complainant] told you that he had no prior broken nose.  So based on all of that there's a reasonable inference that that fracture, the nasal bone fracture was a result of what happened on May 15th, 2010.

[Complainant] also sustained consistent injuries.  The pictures that they took on May 15th, 2010 corroborate [Complainant's] statement that he was punched to the face, mostly to the face.

. . . .

(Emphases added.)

The prosecutor also asserted that Petitioner and Rodriguez had not met the requirements for the mitigating defense that would reduce the Kidnapping charge to a Class B felony:

As to the interrogatories that you have to answer, there are questions about the release -- in the shape and the form that [Complainant] was released by the defendant.  First, is whether it was voluntary.  And, frankly, given the state of the evidence on the credible evidence, yeah, they did let him go in that it's not like the police had to come and release the trunk and let [Complainant] out or anything like that, okay.  So, for what it's worth, it is not in that kind of situation.  So was he released voluntarily? Okay, questionable, but -- but as to whether he was released alive "and" not suffering from serious or substantially bodily injury.  Now there's an "and" which means that he had to had not suffered any serious or substantial bodily injury.  And the substantial bodily injury we had talked about is the Assault 2, the bone fracture.

Also, safe place. Is releasing [Complainant] where now we know it's on top of Onipaʻa Street.  At this point, based

11

> on the evidence, we know that it's near a residential area. But at the time that [Complainant] was released, face down right after having his bag and the cloth taken off, after he's been pushed up the hill, anywhere between 5 to 15 minutes -- he told you on the stand it was 5. He might have told, at a prior proceeding, 15 minutes. Is that a safe place where he doesn't know where to come out? There's no path. In fact, he goes the other way because he thinks that the defendants are gonna come back up the way they came -- they left. State will submit to you that it's not a safe place that he was released at. <u>It was not like he was released at a hospital, back at his house, back at the Waiau District Park, back at the police station. So State would submit to you that where he was released is not a safe</u> place. It's just that [Complainant], throughout this kidnapping, throughout this event on May 15th, 2010, was thinking . . . <u>even when he was released it was his own thinking, quick thinking that got him out of that secluded area and down to Onipaʻa Street</u>.

(Emphases added.)

In his closing argument, Mr. Hawk, counsel for Rodriguez, asserted that the jury should reduce the Kidnapping charge to a Class B felony:

> [Mr. Hawk]: Was he voluntarily released? Absolutely. He ran away. Was there serious bodily injury? There's no fracture, so there's no serious or substantial bodily injury. And is Onipaʻa Street a safe place? I would think so. I mean, there was no evidence that it was a dangerous place. It's not like he was released in the middle of the ocean or in the middle of the night in some war zone. I mean, it's just a residential area. There's nothing that's dangerous about that place.
>
> . . . .

Mr. Hawk also maintained that because there was not proof beyond a reasonable doubt that the fracture was suffered during the Kidnapping, Rodriguez was only guilty of assault in the third degree:

> What else did he do? Well, he was there when [Petitioner] got slapped, right? He admitted - - not when [Petitioner] got slapped but when [Petitioner] slapped [Complainant]. So he's an accomplice to that slap. That's Assault in the Third Degree. Slapping someone in the face causes pain, which is bodily injury, so he's guilty of Assault in the Third Degree and not guilty of Assault in the Second Degree because there's no fracture.

12

Mr. Luiz, counsel for Petitioner, argued that the jury should acquit Petitioner of Kidnapping and Assault in the Second Degree but convict him of Unlawful Imprisonment in the Second Degree and Assault in the Third Degree. As to the substantial bodily injury, Mr. Luiz asserted that Dr. Russell did not testify as to when Complainant fractured his nose and therefore "[t]here's no proof beyond a reasonable doubt that [Complainant] sustained a fracture while he was with [Petitioner]."

Finally, apparently in response to the State's argument regarding reducing the Kidnapping offense to a Class B felony, Mr. Luiz stated that:

> They released [Complainant]. He was safe, residential area. They didn't drop him off anywhere where he could be hurt. He just ran to a house and asked for more help from there. He was released unharmed, and he didn't have any substantial bodily injuries.

In her rebuttal argument, the prosecutor argued that Complainant's testimony that he had not previously broken his nose demonstrated that the bone fracture resulted from "[Rodriguez] and [Petitioner] hitting [Complainant] in the face":

> [The prosecutor]: [Dr. Russell] saw injuries that are consistent with what would have cause a bone fracture on May 15th, 2010; that they were swollen.
>
> And what did [Complainant] tell you? I've never broken my nose. I've never had a broken nose. So based on all of that what's the reasonable inference? That bone fracture happened as a result of [Rodriguez] and [Petitioner] hitting [Complainant] in the face.

(Emphasis added.)

### E.

On January 11, 2012, the jury found Petitioner and Rodriguez guilty as charged of Kidnapping and guilty of the

lesser included offense of Assault in the Third Degree. The jury returned the following verdicts and answers to special interrogatories:

> As to Count 1, Kidnapping:
>
> WE THE JURY in this case find the Defendant Guilty as charged.
>
> As to Count 2, Assault in the Second Degree:
>
> WE THE JURY in this case find the Defendant Guilty of the included offense of Assault in the Third Degree.
>
> SPECIAL INTERROGATORY:
>
> Did the prosecution prove beyond a reasonable doubt that the fight or scuffle was not entered into by mutual consent? (Your answer to this question must be unanimous).
>
> Yes.
>
> SPECIAL INTERROGATORY:
>
> 1. Has the prosecution proven beyond a reasonable doubt that prior to trial [Petitioner] did not release [Complainant] voluntarily?
>
> Yes.
>
> 2. <u>Has the prosecution proven beyond a reasonable doubt that prior to trial [Petitioner] did not release [Complainant] alive and not suffering from serious or substantial bodily injury.</u>
>
> <u>Yes.</u>
>
> 3. Has the prosecution proven beyond a reasonable doubt that prior to trial [Petitioner] did not release [Complainant] in a safe place?
>
> Yes.

(Emphases added).

### F.

On January 20, 2012 Petitioner filed a motion for judgment of acquittal concerning the following issues: (1) "[t]he State did not properly prove venue in this case. The [i]sland of Oahu was merely mentioned by a police officer. [No] witness

state[d] that any of what they testified to occurred in the City and County of Honolulu[,]" and (2) "[t]he Class A felony [Kidnapping] should be reduced to Class B Kidnapping" because "it is undisputable [sic] that . . . Complainant was released from the trunk by Rodriguez without serious or substantial injury as shown by the jury acquitting [him] of Assault in the second degree . . . ."

During a hearing on the motion for judgment of acquittal, Petitioner argued that the jury verdicts were inconsistent, and repeated his argument that the State failed to prove venue. Before denying Petitioner's motion, the following discussion between the Court and counsel for Petitioner occurred:

> [Mr. Luiz]: And I really believe that's an inconsistent verdict, Your Honor . . . You can't find–they're all part of the same crime, it was all the same time frame, the same happening. And we have an inconsistency."
>
> THE COURT: Well, not necessarily because there's another possibility you folks haven't discussed. The possibility is that they found substantial bodily injury, the broken nose, beyond a reasonable doubt but they weren't sure who actually broke that nose. Because both of there were, you know, the testimony was that both of these gentlemen were hitting [Complainant] at the end, you know, by the rock, where the nose apparently was broken. And so the jury could have found there was substantial bodily injury but they didn't know which of the two . . .had actually done the deed.
>     The Kidnapping question is do you believe that the prosecution has proven beyond a reasonable doubt that [Petitioner] voluntarily released the victim alive and not suffering from substantial bodily injury in a safe place prior to trial . . . it doesn't call for determination of which defendant, you know, broke the nose, it calls for the defendant having left the complaining witness there with a broken nose, a broken bone . . . I don't think the verdicts are necessarily inconsistent so I would have to disagree with you there.
>
> [Mr. Luiz]: Well, if they couldn't agree on who did the crime, then that would necessarily acquit both clients because you can't prove guilt beyond a reasonable doubt.
>
> THE COURT: No but they--they found that each client was proven beyond a reasonable doubt to have caused physical

> pain and that's why they convicted these two gentlemen for
> Assault 3.  It's a very interesting verdict.  Actually it
> may well have been a very intelligent jury. I mean, you
> know.

(Emphases added.)

With regard to the venue issue, Mr. Luiz insisted that the prosecution had to establish the incident occurred in "[t]he City and County of Honolulu" in order to prove venue.  The court stated the following:

> THE COURT: The statutes say that the prosecution has to
> prove beyond a reasonable doubt facts supporting venue. And
> venue of course is on this island of Oahu . . . venue was
> testified to by witnesses for the Waiau District Park, the
> complaining witness's home, and finally, Onipaʻa Street
> where the complaining witness was eventually found.
>
> And the testimony is undisputed that all other times he was
> in the car trunk and they were driving on roads, like they
> never went on a boat, they never went on a plane. So can I,
> should I, you know, find that the government did not prove
> facts supporting venue beyond a reasonable doubt on that
> evidence? I don't think I can.

On March 19, 2012, Petitioner and Rodriguez were each sentenced as young adult defendants to an eight-year term of imprisonment for Kidnapping and a one-year term of imprisonment for the Assault in the Third Degree.  Petitioner appealed.

On August 21, 2013 the ICA affirmed the convictions.

## II.

In his Application, Petitioner asks whether the judgments of the ICA and the court should be vacated because (1) there was a "lack of substantial evidence regarding venue in the City and County of Honolulu;" and (2) "the verdict was inconsistent [because] [Petitioner] was not found guilty of assault in the second degree" but instead was found guilty of the lesser included offense of assault in the third degree, but

16

nevertheless "was found guilty of Class A felony [K]idnapping." A Response was filed on October 2, 2013.  No Reply was filed.

III.

With respect to the first question, the ICA observed that HRS § 603-1 (Supp. 1994) states that "[t]he State is divided into four judicial circuits . . . and that [t]he first judicial circuit is the island of Oahu[,]" and that "the Revised Charter of the City and County of Honolulu (RCCCH) § 1-102 (2000)" indicates "that the City and County of Honolulu encompasses the island of Oahu."  State v. Bailey, CAAP-12-0000396, 2013 WL 3776169, at *1 (Haw. App. July 10, 2013) (SDO).  The ICA stated that Petitioner "fails to point to any legal authority . . . that the phrase 'City and County of Honolulu' must be used . . . and that venue is not established by using the phrase 'island of Oahu[.]'"  Id.  The ICA further held that there was "testimony at trial . . . establishing that the events took place on . . . Oahu[,]" and the court "took judicial notice of venue when it noted that the geographic areas described in various testimony were all on the island of Oahu[.]"  Id.  Accordingly, the ICA concluded that "[v]iewing the evidence in the strongest light for the prosecution, sufficient evidence was adduced . . . that the offense took place on . . . Oahu, thus establishing venue beyond a reasonable doubt."  Id. at *2.

With respect to the second question, Petitioner argued that "[Complainant] was released from the trunk . . . without serious or substantial injury[,]" thus Petitioner "is guilty only

17

of a [C]lass B Kidnapping felony." Id. The ICA countered that, as the court noted, "the jury could have concluded that: [Complainant] had suffered 'substantial bodily injury' (i.e. a broken nose)[,]" "a jury could find that a person suffered 'substantial bodily injury,' even though the jury could not determine who caused that 'substantial bodily injury[,]'" and "the State had not . . . [proven] who caused the broken nose[,]" but Petitioner "caused lesser 'bodily injury' for purposes of the offense of Assault in the Third Degree." Id. (emphases omitted). Accordingly, the ICA concluded thus "there was sufficient evidence for the jury to conclude that Complainant's nose was broken and thus, he suffered 'substantial bodily injury.'" Id. at *3. Further, the ICA observed "the jury rejected [Petitioner's] argument . . . that the offense should be reduced to a Class B felony Kidnapping offense . . . [in its answers to the] . . . special interrogatories[.]" Id.

IV.

In connection with the first question, Petitioner maintains that (1) "HRS § 701-114[(1)(d)] [(1993)] provides in relevant part . . . [that] no person may be convicted of an offense unless [facts establishing venue] . . . are proven beyond a reasonable doubt," (2) "[Hawaiʻi Rules of Penal Procedure (HRPP)] Rule 18, [in part] provides: . . . the prosecution shall be had in the circuit in which the offense or any part of it was committed," (3) "proof that an event occurred in the City and

18

County of Honolulu is proof that it occurred within the first judicial circuit," and (4) "[t]he [i]sland of Oahu was merely mentioned by a police officer" and not "a single witness state[d] that any of what they [sic] testified to occurred within the venue of the City and County of Honolulu."  With respect to the ICA's decision, he maintains that (1) "State v. Puaoi, 78 Haw. 185, 190[, 891 P.2d 272, 277] ([]1995)[,] . . . is distinguishable because in that case it was the prosecutor who specifically requested judicial notice of facts establishing venue, not the court sua sponte taking judicial notice of facts establishing venue[,]" and (2) "[i]n the absence of proof of venue, 'the innocence of the defendant is presumed.' [(Citing] HRS § 701-114(2)[ and] State v. Black, 66 Haw. 530, 668 P.2d 32 (1983) (prosecution's failure to prove venue resulted in defendant's acquittal)[)]."[10]

V.

Under HRPP Rule 18, "the prosecution shall be had in the circuit in which the offense or any part of it was committed."  (Emphasis added.)  Thus, to establish venue, it must be proven that "any part" of the offense occurred in the circuit

---

[10]    In its Answering Brief, the State asserted that the testimony from five different witnesses proved that the offenses occurred on the island of Oahu.  The State also contended that the ICA could "take judicial notice that the locations testified to - Kaahumanu Street in Waiau, Waiau District Park, Waiau Fire Station, Komo Mai Drive in Pearl City, Onipaa Street in the Salt Lake-Moanalua Valley area, Kaiser Moanalua Emergency Room, and Salt Lake Boulevard - collectively, are located on the island of Oahu, and in the first judicial circuit."  (Citing Puaoi, 78 Hawaiʻi at 190, 891 P.2d at 277.)  In its Response, the State asserted that because Petitioner "reiterates his argument [before the ICA], [the State] relies on its answering brief."

19

in which the case is tried.  Pursuant to HRS § 701-114(1)(d)[11], "no person may be convicted of an offense unless . . . [venue is] proved beyond a reasonable doubt[.]"  A defendant may move for a judgment of acquittal "on the grounds that the prosecution has not proved the necessary element of venue."  State v. Kwak, 80 Hawaiʻi 297, 305, 909 P.2d 1112, 1120 (1995); see also State v. Miyashiro, 3 Haw. App. 229, 232-33, 647 P.2d 302, 304-05 (1982).

        "The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the [trier of fact], a reasonable mind might fairly conclude guilt beyond a reasonable doubt."  State v. Pone, 78 Hawaiʻi 262, 265, 892 P.2d 455, 458 (1995) (internal quotation marks omitted).  "An appellate court employs the same standard of review."  Id.

        This case was tried in the first judicial circuit. "The first judicial circuit covers the [i]sland of Oʻahu, all other islands belonging to the state (other than Maui, Molokai, Lanai, Kahoolawe, Molokini, Hawaiʻi, Kauai, and Niihau) . . . ." State v. Correa, 5 Haw. App. 644, 650, 706 P.2d 1321, 1325 (1985)

_____

[11]     HRS § 701-114(1)(d) provides in relevant part as follows:

**§ 701-114  Proof beyond a reasonable doubt.**

(1) Except as otherwise provided in section 701-115, no person may be convicted of an offense unless the following are proved beyond a reasonable doubt:
. . .
(d) Facts establishing venue[.]

(Emphases added.)

20

(citing HRS § 603-1(1)). "Consequently, proof that an event occurred . . . on the [i]sland of Oʻahu is proof that it occurred within the first judicial circuit." Id. Here, viewed in the light most favorable to the State, a reasonable mind could "fairly conclude" that the offense occurred on the island of Oʻahu beyond a reasonable doubt.

Complainant indicated that he first met the defendants in front of his house "on Kaahumanu Street," "on the island of Oahu[.]" Complainant related that after meeting the defendants, they went to the park that was "directly across the street" from his house. Officer Deering stated that the park was in the same area as Kaʻahumanu Street "on the island of Oahu." Similarly, Officer Manzano testified that the park was near the Waiau Fire Station, and the Fire Station was "on the island of Oahu."

At the park, the defendants "whacked [Complainant] on the side of [his] head," handcuffed him, and put him in the trunk of their car. The defendants drove with Complainant in the trunk for "about an hour." The defendants removed Complainant from their car and took him to a spot on a hill, and then left. Complainant then went down the road to an "old man's house and asked him to call the police." Officer Wong then interviewed Complainant. Officer Wong stated that the address of the house was "1720 Onipaʻa Street," and the house was "on the [i]sland of Oahu."

Based on the foregoing, the evidence adduced at trial demonstrates that the offense, or at least a "part of it," see

21

HRPP Rule 18, occurred on the island of O'ahu. The witnesses'
testimony indicates that the offense both began and ended on the
island of O'ahu. Moreover, as stated by the court, "the
testimony is undisputed that at all other times he was in the car
trunk and they were driving on roads, [] they never went on a
boat, they never went on a plane[.]" Thus, viewing the evidence
in a light most favorable to the State, a reasonable mind could
have "fairly concluded" that the events occurred on the island of
Oahu and thus, venue in the first circuit was established beyond
a reasonable doubt.[12]  Pone, 78 Hawai'i at 265, 892 P.2d at 458.

                              VI.

                              A.

        In connection with the second question in his
Application, Petitioner contends that "Petitioner was [e]ntitled
to a [j]udgment of [a]cquittal as to Class A Felony Kidnapping"

_____

        [12]     Petitioner also asserts that the court and ICA erred in taking
judicial notice of venue. However, as discussed supra, sufficient evidence
was adduced to establish that a part of the offense occurred on the island of
Oahu without reference to judicial notice. In any event, Petitioner's
assertion that the court could not sua sponte take judicial notice of venue is
incorrect.
        Pursuant to Hawai'i Rules of Evidence (HRE) Rule 201 (1993), a
court may take judicial notice of adjudicative facts. "'Adjudicative facts
. . . are the kind of facts that are ordinarily decided by the trier of fact;
for example, who did what to whom, when, where, how, and why[.]" Puaoi, 78
Hawai'i at 190, 891 P.2d at 277. In Puaoi, this court held that under HRE
Rule 201, "appellate courts may take judicial notice of venue[.]" Id. Under
HRE Rule 201(c), "[a] court may take judicial notice, whether requested or
not." (Emphasis added.) Further, under HRE Rule 201(f), "Judicial notice may
be taken at any stage of the proceeding." Thus, the court was entitled to sua
sponte take judicial notice of venue.
        Similarly, in State v. Schnabel, 127 Hawai'i 432, 279 P.3d 1237
(2012), this court discussed the propriety of sua sponte taking judicial
notice in the context of HRE Rule 202 (1993), which governs judicial notice of
law. This court held that evidence from prior juvenile convictions should not
have been admitted in a subsequent criminal prosecution under HRS § 571-84(h)
(2006 Repl.). Id. at 444, 279 P.3d at 1249. That statute was not raised by
either party; however, this court held that the trial court could have taken
judicial notice of the statute. Id.

because of an "inconsistent verdict." [Application at 8]  As

noted, HRS § 707-720, Kidnapping, provides in relevant part:

> . . . .
> (2) Except as provided in subsection (3), kidnapping is a Class A felony.
> (3) In a prosecution for kidnapping, it is a defense which reduces the offense to a class B felony that the defendant voluntarily released the victim, alive and not suffering from serious or substantial bodily injury, in a safe place prior to trial.

According to Petitioner, he "was acquitted of Assault in the

[S]econd [D]egree but found guilty of the lesser included offense

of Assault in the [T]hird [D]egree."  Petitioner argues that thus

"[i]t is undisputable [sic] that . . . [Complainant] was released

from the trunk by Rodri[g]uez without serious or substantial

injury as shown by the jury acquitting [Petitioner] of Assault in

the second degree while finding him guilty of the lesser included

offense of Assault in the [T]hird [D]egree."  (Citing United

States v. Morales, 677 F.2d 1 (1st Cir. 1982).)  Petitioner

concludes then that he "is entitled to a judgment of acquittal as

to Class A felony [K]idnapping[, and a reduction to a conviction

for] . . . Class B felony Kidnapping."

### B.

In its Answering Brief,[13] the State maintained that by

finding Petitioner guilty of the lesser included offense of

Assault in the Third Degree, the jury found that the State

"proved beyond a reasonable doubt that [Petitioner] caused bodily

injury to [Complainant]," but that "the State did not prove

---

[13]  As stated before, in its Response, the State indicated that it "relies on its answering brief."

beyond a reasonable doubt that [Petitioner] caused substantial bodily injury to [Complainant]." The State argues that in finding Petitioner guilty of Kidnapping as a Class A felony, "the jury found that (1) [Petitioner] did not release [Complainant] voluntarily, (2) [Complainant] suffered serious or substantial bodily injury, and (3) [Petitioner] did not release [Complainant] in a safe place." (Citing HRS § 707-720(3).) Hence, the State apparently asserts that the verdicts were not inconsistent because the verdict indicated that "[Petitioner] <u>caused</u> bodily injury and that [Complainant] <u>suffered</u> substantial bodily injury." (Emphases in original.)

### VII.

First, the court and the ICA incorrectly concluded that the mitigating Class B felony defense to Kidnapping required only a finding that "an alleged victim was <u>suffering</u> from substantial bodily injury," but did not require a determination as to "who caused substantial bodily injury to that alleged victim[.]" <u>Bailey</u>, 2013 WL 3776169, at *2 (emphasis in the original). Such a rule would preclude a defendant from availing himself or herself of the Class B mitigating defense available in the Kidnapping statute even if the injury suffered by the victim was completely unrelated to the alleged Kidnapping.

The problems created by such an interpretation are illustrated by the instant case. As explained in greater detail <u>infra</u>, the State asserted that Complainant suffered "substantial

24

bodily injury" because his nasal bone was fractured.[14] However, Dr. Russell asserted that she couldn't "determine the age" of the fracture. Therefore, in closing argument, defense counsel asserted that no substantial bodily injury occurred because "there's no medical testimony as to when that nose was broken."[15]

Assuming arguendo that Complainant fractured his nasal bone prior to the Kidnapping, his nose still could have been fractured at the time that he was released. At the time of his release, therefore, he would have been "suffering" from a fractured nose, and thus "suffering from substantial bodily injury." Hence, under the interpretation of HRS § 707-720 proposed by the court and the ICA, a defendant could not utilize the Class B mitigating defense even if the substantial bodily injury sustained by the victim had nothing to do with the Kidnapping.

Such a result is clearly contrary to the purpose of the Class B mitigating defense, to "differentiate according to the

_____

[14] In closing argument, the prosecutor asserted that "[t]here's also no dispute that he did suffer the substantial bodily injury" because Dr. Russell stated that "there was a bone fracture; that that bone fracture was consistent with the swollen nose injury she observed on [Complainant,]" and that "[Complainant] told you that he had no prior broken nose[.]" Further, in rebuttal argument, the prosecutor stated that the "bone fracture happened as [Rodriguez] and [Petitioner] [were] hitting [Complainant] in the face." Thus, the State relied on the nasal bone fracture to establish substantial bodily injury.

Additionally, when discussing the Class B mitigating defense specifically, the prosecutor also asserted in closing argument that "the substantial bodily injury we talked about is the Assault 2, the bone fracture." (Emphasis added.) Thus, the State took the position that the same conduct both negatived the Class B mitigating defense and established the commission of the offense of assault in the second degree.

[15] In contrast, the prosecution asserted that it could be determined that the fracture was sustained during the Kidnapping because Complainant testified that he had not previously broken his nose.

severity of the <u>actual harm involved</u>," and to "encourage the actor to proceed less dangerously <u>once the criminal course of conduct has begun</u>." Commentary to HRS §§ 707-720 to 722 (emphases added). Thus, the purpose of allowing a mitigating defense would be undermined by only requiring the State to demonstrate that the victim was <u>suffering</u> from a substantial bodily injury at the time of his release. Instead, evidence must have been adduced that demonstrates that the substantial bodily injury was <u>caused</u> during the course of the Kidnapping by Petitioner, or by the co-defendant as Petitioner's accomplice, or both.[16]

## VIII.

Finally, Petitioner's assertion that he is entitled to the benefit of the Class B mitigating defense is incorrect. Here, Petitioner was charged with Kidnapping based on the unlawful restraint of Complainant with the intent to terrorize him. The Class B mitigating defense is a non-affirmative defense[17] that applies to all versions of Kidnapping, <u>see</u> HRS §

---

[16] To reiterate, the State asserted that the substantial bodily injury suffered by Complainant was a broken nose. Complainant testified that he was punched in the nose while there was a bag over his face, and that Petitioner and Rodriguez were the only individuals present. Thus, the jury could infer from the evidence that both Petitioner and Rodriguez struck Complainant and that either of them or both could have caused Complainant's injuries. The court's instructions stated that "[a] defendant charged with committing an offense may be guilty because he is an accomplice of another person in the commission of the offense." Hence, the jury also could have concluded that either Petitioner or Rodriguez caused the substantial bodily injury and that the other defendant was liable as an accomplice.

[17] "Affirmative defenses are those so designated by the [Hawaiʻi Penal] Code or another statute; or defenses which the Hawaiʻi Penal Code or another statute plainly require the defendant to prove by a preponderance of the evidence." <u>State v. Gabrillo</u>, 10 Haw. App. 448, 455, 877 P.2d 891, 894

707-720(1), and reduces the severity of every Kidnapping version from a Class A felony to a Class B felony. HRS § 707-720(3).

As a result, "where the criminal defense is not an affirmative defense, the 'defendant need only raise a reasonable doubt as to his guilt.'" Gabrillo, 10 Haw. App. at 455, 877 P.2d at 894 (quoting Commentary on HRS § 701-115). The burden then falls on the prosecution to "'prove beyond a reasonable doubt facts negativing the defense.'" Id. (quoting Commentary on HRS § 701-115). Consequently, "'[t]he prosecution does this when the jury believes its case[.]'" Id. (quoting Commentary on HRS § 701-115). Therefore, to convict Petitioner of Kidnapping as a Class A felony, the State was required to disprove the Class B mitigating defense beyond a reasonable doubt.

Here, the jury's response to the special interrogatories indicated that the jury found that the State disproved at least two of the three elements of the Class B mitigating defense beyond a reasonable doubt, i.e., the requirement that Petitioner released Complainant and the requirement that Complainant was released in a safe place. Petitioner challenges only the answer to the second special interrogatory, that Complainant was alive and suffering from serious or substantial bodily injury as inconsistent with the

_____

(1994) (quoting HRS § 701-115(3)) (internal brackets and punctuation omitted). Here, the Class B mitigating defense is not designated as an affirmative defense and there is no statute that requires the defendant to prove the Class B mitigating defense by a preponderance of the evidence. Hence, the Class B mitigating defense is not an affirmative defense. Id.

jury's verdict convicting Petitioner of assault in the third degree.

However, the State would need only to disprove <u>one</u> of the elements of the Class B mitigating defense beyond a reasonable doubt to establish that the defense did not apply. <u>State v. Kikuta</u>, 125 Hawaiʻi 78, 253 P.2d 639 (2011), is instructive in this regard. In <u>Kikuta</u>, this court discussed the trial court's refusal to give the parental discipline defense.[18] 125 Hawaiʻi at 84, 253 P.3d at 645. This court explained that "[i]n order to invoke the parental discipline defense a defendant

---

[18] HRS § 703-309 (1993) provides in relevant part as follows:

**§ 703-309 Use of force by persons with special responsibility for care, discipline, or safety of others.**

The use of force upon or toward the person of another is justifiable under the following circumstances:

(1) The actor is the parent, guardian, or other person similarly responsible for the general care and supervision of a minor, or a person acting at the request of the parent, guardian, or other responsible person, <u>and</u>:

(a) The force is employed with due regard for the age and size of the minor and is reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct; provided that there shall be a rebuttable presumption that the following types of force are not justifiable for purposes of this subsection: throwing, kicking, burning, biting, cutting, striking with a closed fist, shaking a minor under three years of age, interfering with breathing, or threatening with a deadly weapon; <u>and</u>

(b) The force used does not intentionally, knowingly, recklessly, or negligently create a risk of causing substantial bodily injury, disfigurement, extreme pain or mental distress, or neurological damage.

. . . .

(Emphases added.)

28

is required to make a showing that the record contained some evidence supporting [four different] elements."[19]  Id.; accord State v. Crouser, 81 Hawaiʻi 5, 10-11, 911 P.2d 725, 730-31 (1996).  Additionally, Kikuta explained that "because the requirements of HRS § 703-309 are set out in the conjunctive, rather than the disjunctive, a defendant need only fail to fulfill any one element in order to fail to sustain the defense." Id. at 87, 253 P.3d at 648; accord Crouser, 81 Hawaiʻi at 11, 911 P.2d at 731.  Because some evidence existed in the record as to all four elements, this court held that the trial court erred in not instructing the jury as to the defense.  Kikuta, 125 Hawaiʻi at 94, 253 P.3d at 655.

The requirements of the Class B mitigating defense in HRS § 707-720(3) are clearly set forth in the conjunctive, i.e., a defendant must voluntarily release the victim, the victim must be alive and not suffer from serious or substantial bodily injury, and the victim must be released in a safe place.  Hence, "a defendant need only fail to fulfill any one element in order

---

[19]    The four elements of the parental discipline defense are:

(1) [the defendant] was a parent, guardian, or other person as described in HRS § 703-309(1); (2) [the defendant] used force against a minor for whose care and supervision he [or she] was responsible; (3) his [or her] use of force was with due regard to the age and size of the recipient and reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of misconduct; and (4) the force used was not designed to cause, or known to create a risk of causing, substantial bodily injury, disfigurement, extreme pain or mental distress, or neurological damage.

Kikuta, 125 Hawaiʻi at 84, 253 P.3d at 645 (brackets in original) (quoting State v. Miller, 105 Hawaiʻi 394, 401, 98 P.3d 265, 272 (App. 2004).

to fail to sustain the defense." Kikuta, 125 Hawaiʻi at 87, 253 P.3d at 648. Thus, the State was only required to disprove one of the elements of the defense beyond a reasonable doubt to establish that the defendant "failed to fulfill" one element and therefore was not entitled to the defense.

The jury's responses to the two special interrogatories indicated that the State proved beyond a reasonable doubt that Petitioner did not release Complainant voluntarily, and that Petitioner did not release Complainant in a safe place. Hence, the responses to those special interrogatories established that the State "proved beyond a reasonable doubt facts negativing" the first and third elements of the Class B mitigating defense. See Gabrillo, 10 Haw. App. at 455, 877 P.2d at 894. Thus, Petitioner was not entitled to the Class B mitigating defense here.

IX.

Based on the foregoing, the ICA's August 21, 2013 judgment on appeal and the court's March 19, 2012 Judgment of Conviction and Sentence of Petitioner are affirmed, but for the reasons stated herein.

Shawn A. Luiz,
for petitioner

Sonja P. McCullen,
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Simeon R. Acoba, Jr.

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

